**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **MARK W. SENDA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:06CV1626-DJS |
| | ) |
| **XSPEDIUS COMMUNICATIONS, LLC,** | ) |
| **XSPEDIUS MANAGEMENT COMPANY, LLC,** | ) |
| **XSPEDIUS HOLDING CORP.,** | ) |
| **XSPEDIUS EQUIPMENT LEASING, LLC,** | ) |
| **THERMO CAPITAL PARTNERS, LLC,** | ) |
| **THE 1818 FUND III, L.P.,** | ) |
| **JAMES MONROE III, JAMES F. LYNCH,** | ) |
| **and LAWRENCE C. TUCKER,** | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiff Mark Senda, the former Chief Executive Officer and President of defendant Xspedius Communications, LLC, ("Xspedius"), brings five breach of contract claims concerning four stock option contracts and a March 2005 employment letter against defendant Xspedius. Plaintiff also asserts a claim of tortious interference with said contracts and plaintiff and defendant Xspedius's employment agreement of June 1, 2002, against certain members of the Board of Directors and certain direct and indirect shareholders of defendant Xspedius ("non-signatory defendants"),[1]

---

[1] The defendant members of the Board of Directors are James Monroe III, James Lynch, and Lawrence Tucker. The defendant shareholders are Xspedius Management Company, Xspedius Equipment Leasing, Thermo Capital Partners, and The 1818 Fund III.

who did not sign any of the agreements at issue, and defendant Xspedius Holding Corp. ("XHC").[2] Finally, plaintiff asserts against all defendants a claim of civil conspiracy to cause the contract breaches. Now before the Court is defendants' motion to compel arbitration and to dismiss or alternatively to stay this action.

Section 9 of the employment agreement contains an arbitration clause which states:

> Except with respect to injunctive relief under Section 5 of this Agreement, *any* dispute or controversy *arising out of or relating to* this Agreement shall be resolved exclusively by arbitration in St. Louis, Missouri in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect. Judgment on the award may be entered in any court having jurisdiction thereof. The cost of arbitration shall be shared equally by the Company and the Executive, except that each party shall pay the fees and expenses of its counsel.

(Defs.' Ex. 1-A [Doc. 15-3] at § 9 (emphasis added).) Plaintiff alleges that during his employ, he and various Xspedius-related entities entered into the four option agreements, which were subsequently reissued by defendant Xspedius. On March 10, 2005, plaintiff and defendant Xspedius entered into another contract--the March 2005 employment letter. The parties dispute whether plaintiff's August 2005 termination was "for cause," as that affects plaintiff's claims that defendant Xspedius breached the

---

[2] The employment agreement was initially between plaintiff and defendant XHC, which was succeeded by defendant Xspedius.

option agreements. On October 26, 2006, defendant Xspedius filed a written demand for arbitration. On November 8, 2006, despite the pending arbitration, plaintiff filed the instant action.

For the purpose of ruling on defendants' motion to compel arbitration and to dismiss or stay the action, the Court views the allegations in plaintiff's complaint as true. See <u>Suburban Leisure Ctr., Inc. v. AMF Bowling Products, Inc.</u>, 468 F.3d 523, 525 (8th Cir. 2006). Defendants filed this motion pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. The FAA provides in part that "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. "The purpose of the FAA was to reverse judicial hostility to arbitration agreements and to place arbitration agreements on equal footing with other contracts." <u>Keymer v. Mgmt. Recruiters Int'l, Inc.</u>, 169 F.3d 501, 504 (8th Cir. 1999). However, "[a] matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement." <u>Telectronics Pacing Sys., Inc. v. Guidant Corp.</u>, 143 F.3d 428, 433 (8th Cir. 1998).

Under the FAA, there is a presumption of arbitrability in that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986) (citation omitted). In the employment agreement, plaintiff agreed to arbitrate "any dispute or controversy arising out of or relating to" the agreement. (Defs.' Ex. 1-A [Doc. 15-3] at § 9.) As recognized by the Eighth Circuit, this language constitutes a broad arbitration clause as a matter of law. Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co., 118 F.3d 619, 621 (8th Cir. 1997).

In deciding whether to compel arbitration, this Court addresses (1) whether there is a valid arbitration agreement, and (2) whether the dispute falls within the terms of that agreement. Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004). Plaintiff not only concedes that there is a valid and enforceable arbitration agreement between plaintiff and defendants Xspedius and XHC, but also only contends that the claims concerning the March 2005 employment letter are not covered by the arbitration clause. Plaintiff asserts that the employment letter discusses two separate agreements, namely: (1) paragraphs 5 and 6 of the letter amend the employment agreement, and (2) paragraphs 1 through 4 are a separate and independent contract unrelated to the employment agreement. Plaintiff asserts he is suing for breach of, tortious interference with, and civil conspiracy to breach paragraphs 1 through 4 of the

letter.

The Court is not persuaded that the March 2005 employment letter represents two separate contracts. The employment agreement's integration clause in section 11.3 and the clause providing that the contract may only be modified by written agreement in section 11.5 indicate that the letter as a whole amends the employment agreement. (See Defs.' Ex. 1-A [Doc. #15-3] at 7-8.) The letter itself does not indicate that the six consecutively-numbered paragraphs are to be read separately. Furthermore, paragraph 3 not only uses the term "change in control," which is defined in the employment agreement, but also makes explicit reference to the employment agreement with the inclusion of the clause "Unless otherwise specified by Executive's contract." (Defs.' Ex. 1-E [Doc. #15-5] at 5.) A court can compel arbitration concerning an agreement without an arbitration clause if that agreement cross references an agreement with a broad arbitration clause. See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1068-70 (5th Cir. 1998). Similarly, a court can compel parties to an agreement with a broad arbitration clause to arbitrate an issue concerning whether a letter sent between the parties amended the agreement. See Fleet Tire, 118 F.3d at 621-22 (8th Cir. 1997). Extrapolated one step further, a court can even compel the parties to arbitrate the question of whether a controversy relates to an agreement with a broad

5

arbitration clause.  Id. at 621.

Having found that the arbitration clause does apply at least to the signatories of the agreements at issue, the Court turns to whether plaintiff should be compelled to arbitrate his claims against the non-signatory defendants.  According to the Eighth Circuit,

> A nonsignatory can enforce an arbitration clause against a signatory to the agreement . . . when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims' [sic] against the nonsignatory.  When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

CD Partners, LLC v. Grizzle, 424 F.3d 795, 798 (8th Cir. 2005) (citations and quotations omitted).  At the very least, plaintiff's claims against the non-signatory defendants rely on and arise out of the employment agreement containing the arbitration clause.[3]  As discussed above, even plaintiff's claims concerning the March 2005 employment letter ultimately rely on the employment agreement, as the letter may amend the agreement.

Where all the claims against all parties are subject to arbitration, dismissal of the action is proper.  See Stifel, Nicolaus & Co. v. Freeman, 924 F.2d 157, 158 (8th Cir. 1991)

---

[3] Plaintiff's argument that the non-signatory defendants cannot enforce the arbitration clause because they were acting in their own personal interests is an unpersuasive distinction, unsupported by case law.

6

(affirming dismissal without prejudice under 9 U.S.C. § 3); Fedmet Corp. v. M/V BUYALYK, 194 F.3d 674, 676 (5th Cir. 1999) ("district courts have discretion to dismiss cases in favor of arbitration under 9 U.S.C. § 3"). As plaintiff should be compelled to arbitrate all his claims, including those against the non-signatory defendants, the Court will grant defendants' motion and dismiss plaintiff's claims without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to compel arbitration and to dismiss or alternatively to stay this action [Doc. #15] is granted and plaintiff's claims will be dismissed without prejudice herein this day in a separate order.

**IT IS FURTHER ORDERED** that plaintiff may attempt to bring the claims at issue in the ongoing arbitration between the parties.

Dated this ___13th___ day of March, 2007.

                                            /s/Donald J. Stohr
                                            UNITED STATES DISTRICT JUDGE